[No. 7898–1–III.   Division Three.   August 6, 1987.]

DON CRITES, *Respondent*, v. WILLIAM J. KOCH,
ET AL, *Appellants*.

*Timothy H. Esser* and *Irwin, Friel & Myklebust, P.S.,* for appellants.

*Douglas B. Robinson,* for respondent.

SWANSON, J.—Members of the Johnson and Kile families appeal from a judgment awarding Don Crites fee simple title by adverse possession and a prescriptive easement in "Black Acre," a parcel of land encompassing approximately 7/100 of an acre. Appellants contend the trial court erred in finding that Crites' use of a portion of the property was "exclusive." Appellants also argue that the trial court's failure to enter a finding of "hostility" renders its award of a prescriptive easement in the remaining part of the property invalid. We affirm in part and reverse in part.

The material facts are undisputed. Black Acre forms the southeast corner of a quarter section owned since the early 1930's by the Johnson family. Don Crites owns and farms the quarter section immediately to the south of the Johnson property. Members of the Kile family farm the quarter section immediately to the east of Crites' property. Consequently, the Kile property abuts on Black Acre at the southeast corner.

Black Acre is separated from the rest of the Johnson property by County Road 3000, originally constructed in the 1930's. Sometime during the 1970's, the county raised, widened, and blacktopped the road. Robert Johnson sold land on both sides of the road to the county for this purpose. At the same time, the county constructed an "approach" off the road, raising the adjoining edge of Black Acre to facilitate vehicle access to and from the property. A vehicle access path now bisects the property.

The parties' use of Black Acre over the years was harmo-

nious. The appellants used Black Acre as a shortcut to reach nearby fields and as a place to park equipment occasionally for short periods but never farmed the property. Crites apparently farmed the entire parcel until the county road was widened in the 1970's. After the access was constructed, Crites continued to farm the southern part of Black Acre, approximately to the point where the vehicle path crossed the property. When plowing, Crites would "trip the plow," *i.e.*, raise it, so as not to leave a ditch that would interfere with the use of Black Acre as a shortcut to neighboring fields. Crites, who planted and harvested the parcel in the same manner as his own property, never discussed his use with the Johnsons. According to Crites, the appellants' use of Black Acre never conflicted with his farming; similarly, appellants acknowledged that Crites' farming had never restricted their use of Black Acre. All of the witnesses agreed that it was customary for farmers to cross their neighbors' land, with or without permission, as long as such use did not adversely affect the crops.

In 1984, Robert Johnson sold Black Acre to the Kile family for $100. Shortly thereafter, the Kiles began parking equipment permanently on the southern part of Black Acre, preventing Crites from planting. On August 9, 1984, Crites filed the instant action, seeking fee simple title to Black Acre by adverse possession. Following trial on December 18, 1985, findings of fact, conclusions of law, and a judgment were entered, awarding Crites fee simple title to the southern part of Black Acre, up to the point where the access path crossed the property. The trial judge found that Crites had used this part of Black Acre as an owner and that the use had been exclusive for the statutory period. The trial court also found that the remainder of Black Acre had been used as access to their fields by all parties for more than 10 years and concluded that Crites had acquired a prescriptive right of passage across the northern part of Black Acre.

In order to establish title by adverse possession, the claimant must show that possession was (1) exclusive; (2)

actual and uninterrupted; (3) open and notorious; and (4) hostile and under a claim of right made in good faith. *Chaplin v. Sanders,* 100 Wn.2d 853, 857, 676 P.2d 431 (1984); *Roy v. Cunningham,* 46 Wn. App. 409, 412, 731 P.2d 526 (1986), *review denied,* 108 Wn.2d 1018 (1987). Adverse possession is a mixed question of law and fact. *Peeples v. Port of Bellingham,* 93 Wn.2d 766, 771, 613 P.2d 1128 (1980), *overruled in part on other grounds in Chaplin v. Sanders, supra.* Whether essential facts exist is for the trier of fact to determine; whether the facts, as found, constitute adverse possession, is for the court to determine as a matter of law. *Peeples.*

Appellants initially challenge the trial court's finding that Crites' use of the southern portion of Black Acre was exclusive. Generally, shared occupancy of disputed property by the adverse possessor and the title owner precludes "exclusive" possession. *Cf. Scott v. Slater,* 42 Wn.2d 366, 369, 255 P.2d 377 (1953), *overruled in part on other grounds in Chaplin v. Sanders, supra;* Stoebuck, *The Law of Adverse Possession in Washington,* 35 Wash. L. Rev. 53, 72 (1960); 3 Am. Jur. 2d *Adverse Possession* § 78 (1986). Appellants argue that their use of Black Acre as a shortcut and as an occasional parking strip was the only practical use possible and thus amounted to shared possession, rendering Crites' use nonexclusive.

In order to be exclusive for purposes of adverse possession, the claimant's possession need not be absolutely exclusive. Rather, the possession must be of a type that would be expected of an owner under the circumstances. *Russell v. Gullett,* 285 Or. 63, 589 P.2d 729, 730–31 (1979); 3 Am. Jur. 2d § 75, at 171. Important to a consideration of what use an owner would make are the nature and location of the land. *Chaplin v. Sanders, supra* at 863.

In the instant case, Crites testified without contradiction that he had continuously farmed Black Acre, *i.e.,* planted, harvested, rotated, and sold crops in the same manner as his adjoining land for at least 15 years. Cultivation, planting, and harvesting a crop are "superior indicia" of posses-

sion. *Cheek v. Wainwright,* 246 Ga. 171, 269 S.E.2d 443 (1980). Moreover, although the record is not completely clear, appellants' use of Black Acre apparently involved primarily the northern part, the portion not farmed by Crites. The appellants testified that they refrained from parking on or driving across the southern part when it was seeded. It was undisputed that Crites' farming never interfered with the appellants' use of Black Acre. As noted by the trial judge in his oral opinion, the appellants' use of the southern part of Black Acre was "very, very slight."

Crites' use of the southern part of Black Acre thus differed fundamentally in scope and substance from the use made by the appellants. Consequently, appellants' slight and occasional use of the southern part, which occurred in deference to Crites' intensive use, does not constitute shared occupancy. Trifling encroachments by an owner on land held adversely do not render the claimant's use nonexclusive. *See* 3 Am. Jur. 2d § 78, at 175; *cf. Danner v. Bartel,* 21 Wn. App. 213, 584 P.2d 463 (1978) (title owner's exercise of nonpossessory right of entry by maintaining drainage ditch not inconsistent with finding that adverse possessor had "exclusive" possession), *overruled in part on other grounds in Chaplin v. Sanders, supra.* Substantial evidence therefore supports the trial court's finding that Crites' possession of the southern part of Black Acre was exclusive.

Decisions cited by appellants in which the exclusivity requirement was not satisfied because the owner and the adverse possessor shared occupancy of the disputed property are distinguishable. The owner's use in these decisions was substantially greater and more similar to the use made by the adverse possessor than in the instant case.[1] Moreover, the type of use made by the appellants—occasional

---

[1]*See Rick v. Grubbs,* 147 Tex. 267, 214 S.W.2d 925 (1948) (owner conveyed right of way to pipeline company, sold a part of the land, moved the adverse possessor's fence, erected large advertising sign, and permitted army to maneuver on the property); *Paul v. Mead,* 234 Iowa 1, 11 N.W.2d 706 (1943) (owner and adverse claimant made similar use of disputed strip for pasture and access);

parking of equipment and crossing—was a type of use permitted by the community as a neighborly courtesy. Allowing such use would be expected of an owner and appellants' use of the southern part for such purposes did not vitiate the exclusivity of Crites' possession. *See, e.g., Russell v. Gullett, supra* (use of clothesline on disputed property by owner did not render use by adverse possessor nonexclusive since allowing neighbors to use clothesline would be a use expected of an owner).

Appellants next contend that Crites' use of the northern part of Black Acre was not hostile and that the trial court's award of a prescriptive easement was therefore not supported by the record. In order to establish a prescriptive easement, the claimant must prove (1) use adverse to the right of the servient owner; (2) open, notorious, continuous, and uninterrupted use for the entire prescriptive period; and (3) knowledge of such use by the owner at a time when the owner was able to assert and enforce his rights. *Dunbar v. Heinrich,* 95 Wn.2d 20, 22, 622 P.2d 812 (1980). "Findings" on the elements of a prescriptive easement are mixed questions of law and fact. *Petersen v. Port of Seattle,* 94 Wn.2d 479, 485, 618 P.2d 67 (1980).

In the instant case, the trial court entered no finding that Crites' use of the northern part of Black Acre was adverse or hostile. Generally, the failure of the trial court to make an express finding on a material fact requires that the fact be deemed to have been found against the party having the burden of proof. *Baillargeon v. Press,* 11 Wn. App. 59, 67, 521 P.2d 746, *review denied,* 84 Wn.2d 1010 (1974). Moreover, the record is virtually devoid of testimony pertinent to the issue of a prescriptive easement. Much of the

---

*Young v. Lacy,* 221 Neb. 511, 378 N.W.2d 192 (1985) (adverse claimant's possession of land suitable only for parking and access to lake not exclusive when nearby residents used land for same purpose); *Burnett v. Knight,* 428 S.W.2d 470 (Tex. Civ. App. 1968) (adverse claimant's use of disputed strip not exclusive when same use benefited title owner as much as adverse claimant); *Martin v. Randono,* 175 Mont. 321, 573 P.2d 1156 (1978) (adverse claimant's possession not exclusive when title owner used property frequently without objection from claimant).

testimony failed to distinguish use of the northern and southern parts of Black Acre.

■ Adverse use is use hostile to the servient owner, use that the owner would exercise, entirely disregarding the claims of others. *Malnati v. Ramstead,* 50 Wn.2d 105, 108, 309 P.2d 754 (1957). Permissive use is not hostile and does not commence the running of the prescriptive period. *Washburn v. Esser,* 9 Wn. App. 169, 171, 511 P.2d 1387 (1973). Use that is permissive in its inception cannot ripen into a prescriptive right unless the claimant has made a distinct and positive assertion of a right hostile to the owner. *Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn.2d 75, 84, 123 P.2d 771 (1942), *overruled in part on other grounds by Cuillier v. Coffin,* 57 Wn.2d 624, 358 P.2d 958 (1961).

In addition, use of property, at its inception, is presumed to be permissive. *Petersen v. Port of Seattle, supra* at 486. However, a variety of circumstances are relevant to the question of whether use was hostile or permissive. *See generally Miller v. Jarman,* 2 Wn. App. 994, 471 P.2d 704, *review denied,* 78 Wn.2d 995 (1970).

Crites used the northern part of Black Acre primarily to turn around his equipment and as access to the southern part; he also sprayed the weeds. The fact that such use was without permission, however, does not conclusively establish hostility, although unchallenged use for the prescriptive period is one circumstance from which a finding of adverse use may be drawn. *Miller v. Jarman, supra* at 997. Other circumstances may suggest that such use was permitted as a neighborly courtesy. *Miller v. Jarman.* The inference of permissive use is applicable to any situation in which it is reasonable to infer that the use was permitted by neighborly sufferance and acquiescence. *Roediger v. Cullen,* 26 Wn.2d 690, 707, 175 P.2d 669 (1946).

All of the parties agreed that it was common for farmers to cross and to park equipment on their neighbors' fields. Such use was recognized as neighborly courtesy, whether or not permission was expressly granted, and was not per-

ceived as a trespass. *Cf. Anderson v. Secret Harbor Farms, Inc.,* 47 Wn.2d 490, 288 P.2d 252 (1975) (only testimony of neighborly act was in the questions asked). Crites never complained about such actions by others because it would not be "neighborly." Crites also acknowledged that he no longer farmed all of Black Acre. After construction of the approach by the county in the 1970's, he farmed only the southern part and would raise his plow when nearing the access path so that others would not have to cross the ditch. Such actions strongly suggest that Crites recognized the rights of others to the northern part of Black Acre.

In summary, the type of use made by Crites of the northern part of Black Acre was perceived by the community as a neighborly accommodation. On the basis of this record we cannot conclude that such use was hostile as a matter of law. The trial court's award of a prescriptive easement was therefore not supported by the record.

The trial court's award of fee simple title to the southern part of Black Acre is affirmed; the award of a prescriptive easement is reversed.

GREEN and MUNSON, JJ., concur.