[No. 34857-4-I.   Division One.   September 11, 1995.]

TIMBERLANE HOMEOWNERS ASSOCIATION, INC., *Respondent*, v. CHARLES L. BRAME, ET AL., *Appellants*.

*David H. Karlen*, for appellants.

*Vernon S. Finley*, for respondent.

SEINFELD, J. — The Timberlane Homeowners Association, Inc. ("the Association") seeks to enforce its members' easement rights to a common area in the Timberlane Estates subdivision, in Kent, Washington. That common property borders the lot owned by Mary and Charles Brame who maintain that they acquired the Association's fee simple title to that common property through adverse possession. The trial court denied the Brames' motion for partial summary judgment, granted the Association's motion for summary judgment, and quieted title to the common property in the Association. Because the Association, on the record before us, lacks standing to bring an action to enforce its members' easement rights, and the Brames have established the elements of adverse possession as to the Association's fee interest in the disputed property, we reverse.

In June 1989, the Brames purchased Holly Laggart's house located on lot 210 of the subdivision. The statutory warranty deed conveyed title to the Brames subject to "[a]ny and all easements, restrictions, reservations, rights of way and zoning ordinances, if any, enforceable in law and equity." Pursuant to the Declaration of Covenants, Conditions and Restrictions ("the Declaration") filed by the developer, every record owner of a fee interest in any lot in the subdivision is a member of the Association. The Association acquired fee simple title to the common properties in the subdivision, which by definition are not "lots," and every member acquired "a right and easement of enjoyment in and to the common properties . . . ."

In 1992, the Association notified the Brames that their fence encroached on the common area adjoining their lot and asked them to remove it. The Brames refused, claiming that they had acquired the Association's fee title to the disputed property through adverse possession. The Association then sued the Brames to quiet title to the common area and obtain injunctive relief requiring the removal of the fence and a cement patio encroaching on the common area. The Brames counterclaimed, seeking a decree quieting title to the common area in their name; they also brought a third-party complaint against Laggart.

In its motion for summary judgment, the Association argued that under *Burkhard v. Bowen*, 32 Wn.2d 613, 203 P.2d 361 (1949), the Brames could not adversely possess the easement rights of the Association's members. The trial court agreed, and in addition to quieting title to the disputed common area in the Association, it issued an injunction requiring the Brames to remove the fence and other encroaching improvements. The Brames appeal.

## I

### STANDARD OF REVIEW

A party is entitled to summary judgment when there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law. CR 56(c); *Scott Galvanizing, Inc. v. Northwest EnviroServs. Inc.*, 120 Wn.2d 573, 580, 844 P.2d 428 (1993). When reviewing a summary judgment order, this court engages in the same inquiry as the trial court and considers all facts submitted and reasonable inferences from them in the light most favorable to the nonmoving party. 120 Wn.2d at 580.

## II

### THE ASSOCIATION'S STANDING

We first decide whether the Association has standing to enforce its members' easement rights to the disputed common area. The Brames argue that the Association lacked such standing because it did not share its members' easement rights and the record contains no evidence that the members authorized the Association to sue on their behalf to protect and enforce their rights.[1] Although the Brames made the same argument below, the trial court made no ruling on the standing issue.

The doctrine of standing generally prohibits a party from asserting another person's legal right. *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 138, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed*, 488 U.S. 805 (1988); *Miller v. United States Bank*, 72 Wn. App. 416, 424, 865 P.2d 536 (1994). A party has standing to raise an issue if it "has a distinct and personal interest in the outcome of the case." *Erection Co. v. Department of Labor & Indus.*, 65 Wn. App. 461, 467, 828 P.2d 657 (1992), *aff'd*, 121 Wn.2d 513, 852 P.2d 288 (1993). Stated another way, a party has standing if it demonstrates "a real interest in the subject matter of the lawsuit, that is, a present, substantial interest, as distinguished from a mere expec-

---

[1]After oral argument on appeal, the Association filed a Motion To Supplement the Record under RAP 9.11 with the original, certified copy of the Declaration which includes Article XI. That article was not before the trial court. Because the Association has failed to satisfy all six requirements of RAP 9.11, we deny the motion. *See Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 640, 762 P.2d 1141 (1988).

tancy, or future, contingent interest, and the party must show that a benefit will accrue it by the relief granted." *Primark, Inc. v. Burien Gardens Assocs.*, 63 Wn. App. 900, 907, 823 P.2d 1116 (1992).

The Association relies on Article VIII of the Declaration to assert its standing to enforce the members' easement rights. Section 1 of Article VIII requires the Association to maintain the common properties as follows:

> The Developer during the development period, and thereafter the Association, shall maintain (1) all common properties and facilities, including but not limited to all roads and underground utilities located on common property; (2) the median or boulevard planter strips located on streets within the properties; and (3) all street lighting facilities. The cost of all such maintenance shall be paid for from assessments collected by the Trustee, and, during the development period, also as provided in subparagraph (a) of Article VII [regarding methods of assessment].

Section 2 of Article VIII states that if an individual owner subject to assessment fails to maintain his or her premises, the Association has the right to enter the premises and "repair, maintain, and restore the lot and the exterior of the buildings and any other improvements erected thereon . . . ."

The use of the word "maintain" in Article VIII clearly refers to the *physical* maintenance of the common areas. We find no indication, however, of an additional intention that the word "maintain" authorizes the Association to enforce its members' easement rights. Thus, the Association's reliance on Article VIII is misplaced.

■■ Likewise, the case law on which the Association relies does not support its argument. While *Rodruck v. Sand Point Maintenance Comm'n*, 48 Wn.2d 565, 295 P.2d 714 (1956) and *Lakemoor Community Club, Inc. v. Swanson*, 24 Wn. App. 10, 600 P.2d 1022, *review denied*, 93 Wn.2d 1001 (1979), involve instances where similar "associations" litigated issues for their respective members, neither case addressed the issue of whether, absent

express authority from its members, a homeowners association has standing to enforce its members' property rights. Those cases therefore do not permit us to conclude that the Association has standing here. *See Berschauer/ Phillips Constr. Co. v. Seattle Sch. Dist. 1*, 124 Wn.2d 816, 824, 881 P.2d 986 (1994) (when a legal theory is not discussed in an opinion, that opinion is not controlling on a future case in which the parties properly raise the theory).

■ Nor does the Association's fee interest in the common properties, alone, endow it with standing to assert its members' easement rights; it must show "a present, substantial interest" in those easement rights and "that a benefit will accrue it by the relief granted." *Primark*, 63 Wn. App. at 907. The Association has failed to make that showing. Thus, the trial court erred by granting the Association's motion for summary judgment and issuing the injunction.

## III

### Adverse Possession of the Fee Interest

■ Next we must determine whether the Brames established the elements of adverse possession as to the Association's fee interest in the disputed common property. To establish adverse possession of real property, a party must prove its possession is "(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile." *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989); *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984). Those elements must exist concurrently for ten years. RCW 4.16.020; *ITT Rayonier*, 112 Wn.2d at 757. The element of hostility " 'does not import enmity or ill-will, but rather imports that the claimant is in possession as owner, in contradistinction to holding in recognition of or subordination to the true owner.' " *Chaplin*, 100 Wn.2d at 857-58 (quoting *King v. Bassindale*, 127 Wash. 189, 192, 220 P. 777 (1923)). The "ultimate test" is whether the party claiming adverse possession exercised dominion over

the land "in a manner consistent with actions a true owner would take." *ITT Rayonier*, 112 Wn.2d at 759. When the facts are not in dispute, the court determines whether the facts constitute adverse possession as a matter of law. *ITT Rayonier*, 112 Wn.2d at 758.

Here, the parties do not dispute the facts. The declarations of the two former owners of the lot indicate that the fence and patio that encroach on the common area had been in place since 1975 and had never been altered.[2] According to one of those declarations, "[t]he yard was completely enclosed so that it could not be entered from the outside. It was obvious that physically this enclosed yard belonged to the house and was not public property or property shared with other residents in the area or subdivision."

In his declarations, Charles Brame states that he replaced the original chain link fence in 1991 with a wood fence, but "for the most part" he placed it "in exactly the same location as the chain link fence had been, using many of the same post holes." He and his family planted a number of trees and bushes in the disputed area, and his children have played "constantly" in the enclosed yard. Brame also states that "the common area south of [their lot] is vacant and not used," and it "is not necessary for access to any other house in the subdivision." Moreover, the Association never maintained the common area in any way until after it sued the Brames. Through those undisputed facts, the Brames have proved all of the elements of adverse possession for the prescribed ten-year period.

■ Nevertheless, the Association contends that the Brames' use of the property was merely "permissive." We disagree. As *Crites v. Koch*, 49 Wn. App. 171, 177, 741 P.2d 1005 (1987) explained,

[p]ermissive use is not hostile and does not commence the

[2]In 1991, the Brames added a new fence to an additional seventy-seven-square-foot portion of the property. They do not claim that they acquired title to that portion of land through adverse possession.

running of the prescriptive period. Use that is permissive in its inception cannot ripen into a prescriptive right *unless the claimant has made a distinct and positive assertion of a right hostile to the owner.*

In addition, use of property, at its inception, is presumed to be permissive. *However, a variety of circumstances are relevant to the question of whether use was hostile or permissive.*

. . . *[U]nchallenged use for the prescriptive period is one circumstance from which a finding of adverse use may be drawn.* Other circumstances may suggest that such use was permitted as a neighborly courtesy. The inference of permissive use is applicable to any situation in which it is reasonable to infer that the use was permitted by neighborly sufferance and acquiescence.

(Citations omitted. Italics ours.)

In *Crites*, a farmer's use of a field near his own land for farming was deemed a "neighborly accommodation" and not hostile use because the farmer also acted in ways that showed he recognized others' right to access and use the field. *Crites* 49 Wn. App. at 178. In contrast, the Brames' and their predecessors' unchallenged use of the disputed common area for significantly more than ten years cannot be characterized as mere permissive use through "neighborly sufferance and acquiescence." *Crites*, 49 Wn. App. at 177. Although the use was originally permissive because the owners of lot 210, as members of the Association, had a nonexclusive easement right to the common area, the construction of a fence and a concrete patio on the property far exceeded a reasonable exercise of that easement right. The use of the common area here demonstrates that the various owners of lot 210 exercised dominion over the disputed land "in a manner consistent with actions a true owner would take." *ITT Rayonier*, 112 Wn.2d at 759. It thus was not permissive use.

█ Further, the Association's argument that it did not have notice of the Brames' adverse possession until it received their attorney's 1993 letter is without merit. If one's use of another's land is "open, notorious and adverse,

the law presumes knowledge or notice in so far as the owner is concerned. . . . [I]f the owner knew of the adverse user, no further proof as to notice is required." *Hovila v. Bartek*, 48 Wn.2d 238, 241-42, 292 P.2d 877 (1956); *see also Chaplin*, 100 Wn.2d at 862. The adverse use of the disputed common area was unquestionably open, notorious, and adverse to the Association's fee interest.

Finally, the Association contends that the Brames' and their predecessors' use of the common area was not "sufficient[ly] adverse" (Br. of Resp't at 38) for the Brames to acquire fee title to the property, citing *Thompson v. Smith*, 59 Wn.2d 397, 407, 367 P.2d 798 (1962) and *Edmonds v. Williams*, 54 Wn. App. 632, 636, 774 P.2d 1241 (1989). Those cases both involve the issue of whether a party's actions were sufficiently inconsistent with the use of an easement to prove adverse possession of the easement. Those cases thus have no bearing on whether the Brames' actions satisfied the elements of adverse possession as to the Association's fee interest. As we have discussed, they did. Consequently, the Brames are entitled as a matter of law to an order of partial summary judgment quieting title in them to the fee interest in the disputed common property. *See ITT Rayonier*, 112 Wn.2d at 759.

We reverse the trial court's order granting the Association summary judgment, issuing the injunction, and denying the Brames' motion, and we grant the Brames' motion for partial summary judgment as a matter of law.

COLEMAN and WEBSTER, JJ., concur.

Review denied at 129 Wn.2d 1004 (1996).