[No. 37417-0-II.   Division Two.   April 6, 2010.]

MARTY TEEL ET AL., *Respondents*, v. RALPH J. STADING II ET AL., *Appellants*.

---

*David A. Nelson* (of *Nelson Law Firm PLLC*), for appellants.

*Cassie N. Crawford* (of *Nellor Retsinas Crawford*), for respondents.

¶1 QUINN-BRINTNALL, J. — Ralph J. Stading II (Stading), Ralph C. Stading III, and the Stading Family Trust LLC (Trust)[1] appeal a superior court order quieting title to a

---

[1] Stading is the manager of the Trust.

portion of a Woodland, Washington, property in Mary and Marty Teel. On appeal, the appellants argue that the trial court's unchallenged finding of fact five negated the hostility element of the Teels' adverse possession claim and requires reversal of the trial court's order quieting title in them. We agree and reverse.

## FACTS

¶2 In 1989 or 1990, the Teels moved onto a 5.11-acre property in Woodland, Washington. The Teel property borders land owned by the Trust, which the Trust holds for future development. At issue is the "north disputed area," 1.3 acres of land between the Trust's actual property line and the Teels' fencing put up sometime in July 1990.[2] 1 Report of Proceedings at 144-45.

¶3 On January 3, 2006, the Teels filed a complaint in Cowlitz County Superior Court seeking to quiet title to the "north disputed area." The appellants moved for summary judgment, which the trial court denied, on the ground that no issue of material fact existed supporting the Teels' adverse possession claim. After a bench trial, the trial court entered findings of fact and conclusions of law on December 24, 2007, followed by a judgment quieting title in the Teels entered on August 4, 2008. This appeal followed.

## ANALYSIS

ADVERSE POSSESSION STANDARD OF REVIEW

¶4 To prove adverse possession, the Teels were required to prove that they possessed the "north disputed area" in a manner that was (1) exclusive, (2) open and notorious, (3) hostile, and (4) actual and uninterrupted for

---

[2] The record refers to two types of fencing—one is a fence that the Teels built that became overgrown with blackberries and other vegetation, and the other fencing, which is apparently portable, they used to pasture horses. Our discussion of fencing in this opinion refers to the fence with overgrown blackberries and vegetation.

the statutory period of 10 years. RCW 4.16.020(1); *Chaplin v. Sanders*, 100 Wn.2d 853, 857-62, 676 P.2d 431 (1984). The party claiming adverse possession must establish each element by a preponderance of the evidence.[3] *Varrelman v. Blount*, 56 Wn.2d 211, 211-12, 351 P.2d 1039 (1960). Permission, express or implied, from the true owner negates the hostility element because permissive use is inconsistent with making use of property as would a true owner. *Chaplin*, 100 Wn.2d at 861-62.

¶5 The trial court's finding of fact five states in relevant part:

> After moving onto the property, [Mary] Teel ran into Mr. Ralph J. Stading on the Stading property north of the Teels [sic] and asked permission to ride and graze horses on the Stading property. Mr. Stading gave his permission but stated that he was not giving up one square inch of his property.

2 Clerk's Papers (CP) at 215. Neither party assigned error to finding of fact five and it is a verity on appeal.[4] *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980) (unchallenged findings of fact are verities on appeal);

---

[3] We note in passing that both the trial court and the appellants misapply the clear, cogent, and convincing standard for proving the elements of adverse possession. Preponderance of the evidence is the standard for adverse possession, whereas the clear, cogent, and convincing standard applies in boundary acquiescence estoppel claims. *Compare Varrelman v. Blount*, 56 Wn.2d 211, 211-12, 351 P.2d 1039 (1960) (stating the adverse possession burden of proof is by a preponderance of the evidence), *with Muench v. Oxley*, 90 Wn.2d 637, 641-43, 584 P.2d 939 (1978) (stating a clear, cogent, and convincing standard for acquiescence claims but referring to substantial evidence in an adverse possession analysis), *overruled on other grounds by Chaplin*, 100 Wn.2d at 861 n.2.

[4] The Teels did not file a cross appeal or assign error to this finding. While the failure to appeal this finding of fact makes it unnecessary for this court to review the evidentiary support for it, we note that finding of fact five is supported by substantial evidence. When we review findings of fact, we review the record to determine if substantial evidence exists that supports the trial court's findings. *Cent. Puget Sound Reg'l Transit Auth. v. Miller*, 156 Wn.2d 403, 419, 128 P.3d 588 (2006). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise. *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986), *cert. dismissed*, 479 U.S. 1050 (1987). Stading testified that he gave the Teels express permission to ride and graze horses on *all* of the land until development of the land began. While the parties disputed the contents of this conversation at trial, we do not review credibility determinations. *Miller v. McCamish*, 78 Wn.2d 821, 831, 479 P.2d 919 (1971). Substantial evidence in the record supports the trial court's unchallenged finding of fact five.

*see Metro. Park Dist. of Tacoma v. Griffith*, 106 Wn.2d 425, 433, 723 P.2d 1093 (1986). The appellants argue that finding of fact five conclusively establishes that the Teels had permissive use of the "north disputed area" and that their claim of adverse possession necessarily fails. We agree.

¶6 The Teels suggest that Stading and Mary Teel did not have a meeting of the minds regarding the scope of Stading's permission and that, without such an agreement, their building of the fence was sufficiently hostile to prove their adverse possession claim. We disagree.

¶7 Arguments that Stading and the Teels did not have a meeting of the minds as to the scope of the permissive use granted are irrelevant. The granting of permission here was not a contractual agreement but, rather, a temporary revocable license granted by Stading to the Teels. A licensee is " 'a person who is privileged to enter or remain on land only by virtue of the possessor's consent.' " *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 133, 875 P.2d 621 (1994) (quoting *Younce v. Ferguson*, 106 Wn.2d 658, 667, 724 P.2d 991 (1986)). Additionally, although a mutual understanding and agreement of an incorrect boundary line may be relevant in a boundary line acquiescence claim, it is not relevant in adverse possession claims. *Compare Lamm v. McTighe*, 72 Wn.2d 587, 592-93, 434 P.2d 565 (1967) (stating the elements of a boundary line mutual recognition and acquiescence claim), *with Chaplin*, 100 Wn.2d at 857 (stating the elements of an adverse possession claim); *see also Campbell v. Reed*, 134 Wn. App. 349, 361-63, 139 P.3d 419 (2006) (analyzing adverse possession and boundary line mutual recognition and acquiescence claims separately), *review denied*, 160 Wn.2d 1023 (2007).

¶8 Next, we review questions of law de novo. *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 436-37, 971 P.2d 936 (1999). In adverse possession cases, "hostile" does not mean animosity; rather, it is a term of art which means that the claimant possesses property in a manner not subordinate to the title of the true owner. *El Cerrito, Inc. v.*

*Ryndak*, 60 Wn.2d 847, 854, 376 P.2d 528 (1962). To prove hostility, the claimant must produce evidence showing that he treated the property as would a true owner throughout the statutory period. *Chaplin*, 100 Wn.2d at 860-61. An adverse possessor bears the burden of proving that permission terminated either because (1) the claimant asserted a hostile right or (2) the servient estate changed hands through death or alienation. *Miller v. Anderson*, 91 Wn. App. 822, 829, 964 P.2d 365 (1998) (citing *Granston v. Callahan*, 52 Wn. App. 288, 294-95, 759 P.2d 462 (1988)), *review denied*, 137 Wn.2d 1028 (1999); *see also Ormiston v. Boast*, 68 Wn.2d 548, 551, 413 P.2d 969 (1966) (permissive use cannot ripen into prescriptive use unless distinct change in use provides notice to owner). We determine when the permissive use terminates based on the viewpoint of the party who granted the permission. *Miller*, 91 Wn. App. at 829. An adverse possessor has the burden of showing that the permission terminated and that the original owner had notice of the adverse use. *Miller*, 91 Wn. App. at 832. The claimant's subjective beliefs and intent are not relevant, but permission, express or implied, from the true owner negates the hostility element as a matter of law because permissive use is inconsistent with making use of property as would a true owner. *Chaplin*, 100 Wn.2d at 861-62.

¶9 Here, the trial court found that the appellants owned the "north disputed area"; that Stading granted the Teels express permission to use all of the property to graze and ride their horses without limitation; and, when granting this permission, that Stading explicitly stated that "he was not giving up one square inch of his property." 2 Clerk's Papers at 215. The trial court did not expressly determine that the Teels asserted a right to the land that terminated this permissive use and put the appellants on notice of their hostile and unpermitted use of the land. While the Teels assert that their fence put the appellants on notice of their adverse use, the trial court did not find that the Teels' fence exceeded, from the appellants' viewpoint, the permission given to

them to use the property. In the absence of such a finding, the statutory adverse possession period did not begin to run. Accordingly, we reverse the trial court's order quieting title to the "north disputed area" in the Teels and remand for entry of an order affirming the appellants' title to the "north disputed land."

¶10 Because substantial evidence supports the trial court's unchallenged factual finding that Stading granted the Teels permission to use all of the land, which necessarily included the "north disputed land," and because that finding necessarily negates the Teels' adverse possession claim, we do not address the appellants' remaining arguments.

¶11 Reversed.

VAN DEREN, C.J., concurs.

¶12 ARMSTRONG, J. (dissenting) — I respectfully dissent. The majority premises its analysis on finding of fact number five, which states that Stading gave the Teels permission "to ride and graze horses on the Stading property." Clerk's Papers (CP) at 215. In its conclusion, the majority alters finding number five to a "finding that Stading granted the Teels permission to use *all* of the land." Majority at 397 (emphasis added). Not only is the word "all" missing from finding number five, finding number eight states that Stading granted the Teels permission "to graze their horses *in [the] upper and lower pasture.*" CP at 215 (emphasis added). And the parties agreed in oral argument before us that the upper and lower pasture is separate and distinct from the north disputed area. Stading does not challenge finding eight, and unchallenged findings are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

¶13 Yet, finding number eight speaks of grazing only, raising the possibility the trial court found that Stading gave the Teels permission to *ride* on all his property but

limited his permission for grazing to the upper and lower pastures.[5] Even so, we should sustain the trial court's conclusion that Teels established title to the disputed property by adverse possession. The trial court found that the Teels fenced the disputed property, cleaned it up by paying to have old cars removed, sprayed and cut weeds, and used the property to graze horses and raise pigs. Assuming the trial court intended to find that Stading granted permission only to ride on the disputed property, this use far exceeds such use. And it would amount to a "distinct change" that put Stading on notice of Teels' adverse use. *Miller v. Anderson*, 91 Wn. App. 822, 829, 964 P.2d 365 (1998) (citing *Ormiston v. Boast*, 68 Wn.2d 548, 551, 413 P.2d 969 (1966)).

¶14 Because the trial court found the necessary elements of the Teels' adverse possession claim and specifically found that Stading's permission did not include the north disputed area, I would affirm.

---

[5] Other than this difference between finding five and finding eight, the findings and conclusions do not differentiate between permitted uses for different parts of Stading's property.