IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JAMES P. THOMAS and DELORES I. THOMAS, husband and wife, | ) ) ) | No. 30663-1-III |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| ANGELO BRUNETTO and LINA BRUNETTO, husband and wife, | ) ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) ) | |

BROWN, J. — Angelo and Lina Brunetto (the Brunettos) appeal the trial court's quiet title judgment granted to adjacent property owners, James P. and Delores I. Thomas (the Thomases). The Brunettos contend the trial court erred in deciding the Thomases proved adverse possession or, alternatively, mutual recognition and acquiescence. We conclude the trial court did not err in its decision on the first ground and do not review its alternative decision on the second ground. Accordingly, we affirm.

FACTS

The unchallenged factual findings here are verities on appeal. See RAP 10.3(a)(4), (g); *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980). About 44 years ago, Mr. Thomas's parents bought a land parcel and cabin located at Deer Lake in Stevens County. Another land parcel and cabin were situated

immediately east. The cabins stood about 25 feet apart from each other without indication of the boundary line between the parcels. The Thomas family assumed the boundary line was halfway between the cabins in an area then overgrown with brush. They then began building improvements and cultivating a lawn on what they understood to be their land.

In 1969, the Thomas family replaced cobblestone steps with concrete and laid a cement pad at the bottom by the lake. From 1971 to 1972, they built a privacy fence and patio area with a wood retaining wall and stone barbeque. In 1974, they placed timber rounds on the patio floor. Gradually throughout the 1970s, they cleared the brush and cultivated a lawn. Each summer from the time they made the improvements until 1987, they used the patio and cement pad for recreation on weekends, holidays, and vacations. Each winter, they stored watercraft on the cement pad.

In 1990, the Brunettos acquired the east parcel and Mr. Thomas acquired the west parcel. Mr. Thomas never asked the Brunettos for their permission to use or occupy the land because he considered it his own. No evidence suggested the Brunetto predecessors ever used or cared for the land west of the assumed boundary, but even if they had, any such acts "would have been extremely episodic." Clerk's Papers (CP) at 96-97. Mr. and Mrs. Thomas married in 1997.

A neighbor, Linda Howe, observed that by 1972, the Thomas family's improvements demarcated the assumed boundary in "a straight line from the edge of the cement pad to the corner of the patio to the corner of the privacy fence." CP at 101. She noted the Thomas family and the Brunetto predecessors each used and cared for

2

their respective land consistent with the assumed boundary. While she saw the Thomas family regularly recreating on or around the improvements and caring for the lawn west of the assumed boundary, she never saw the Brunetto predecessors do so. Another neighbor, Wade Carpenter, observed that by 1974, the cement pad, patio, and privacy fence "clearly defined" the assumed boundary. CP at 102. He noted the Thomas family's improvements left a "footprint" still remaining on the land. CP at 102. Additionally, he never saw the Brunetto predecessors use or care for the land west of the assumed boundary.

In 2008, a surveyor determined the Thomases' cabin, improvements, and lawn encroached on the Brunettos' land. The Thomases sued to quiet the Brunettos' title. The Brunettos admitted the Thomases owned the cabin and concrete path but disputed the remaining land west of the assumed boundary. Following a bench trial, the trial court decided the Thomas family adversely possessed the land from the Brunetto predecessors or, alternatively, those parties adjusted the boundary line by their mutual recognition and acquiescence. The Brunettos appealed.

## ANALYSIS

The dispositive issue is whether the trial court erred by quieting the Brunettos' title under adverse possession. The Brunettos contend the record insufficiently supports the trial court's exclusive and hostile use findings. We disagree.

Following a bench trial, we review factual findings for substantial evidence and legal conclusions de novo, determining whether the findings support the conclusions. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 437, 545 P.2d 1193 (1976);

3

*Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). If the trial court mislabels a factual finding or legal conclusion, we consider it for what it really is. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). Substantial evidence is a "sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise." *Helman v. Sacred Heart Hosp.*, 62 Wn.2d 136, 147, 381 P.2d 605 (1963). We defer to the trial court's assessment of witness credibility and evidence weight. *In re Welfare of Sego*, 82 Wn.2d 736, 739-40, 513 P.2d 831 (1973).

Where substantial evidence supports a factual finding, we do not "substitute our judgment for that of the trial court," even if we might have resolved the factual dispute differently. *Wenzler & Ward Plumbing & Heating Co. v. Sellen*, 53 Wn.2d 96, 101, 330 P.2d 1068 (1958); *accord Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Under adverse possession, a person acquires legal title to another's land if, for at least 10 years continuously, he or she possesses the land in a manner that is (1) "actual and uninterrupted," (2) "open and notorious," (3) "exclusive," and (4) "hostile." *Skansi v. Novak*, 84 Wash. 39, 44-45, 146 P. 160 (1915), *overruled on other grounds by Chaplin v. Sanders*, 100 Wn.2d 853, 676 P.2d 431 (1984); *see* RCW 4.16.020(1); *Gorman v. City of Woodinville*, 175 Wn.2d 68, 71-72, 283 P.3d 1082 (2012). The required burden of proof for each element is a preponderance of evidence. *Teel v. Stading*, 155 Wn. App. 390, 394, 228 P.3d 1293 (2010) (citing *Varrelman v. Blount*, 56 Wn.2d 211, 211-12, 351 P.2d 1039 (1960)).

4

An adverse possessor's dominion over the land must be as exclusive as the community would expect of an ordinary title owner under the circumstances, including the land's nature and location. *Crites v. Koch*, 49 Wn. App. 171, 174, 741 P.2d 1005 (1987); *see ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 758-60, 774 P.2d 6 (1989). Thus, the adverse possessor need not exclude the title owner entirely. *Crites*, 49 Wn. App. at 174. If the adverse possessor allows the title owner "'occasional, transitory use . . . as a neighborly accommodation,'" and the community would expect an ordinary title owner to allow such use, possession is likely exclusive. *Lilly v. Lynch*, 88 Wn. App. 306, 313, 945 P.2d 727 (1997) (internal quotation marks omitted) (quoting 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 8.19, at 516 (1995)); *see Frolund v. Frankland*, 71 Wn.2d 812, 818-19, 431 P.2d 188 (1967), *overruled on other grounds by Chaplin*, 100 Wn.2d 853. But if the adverse possessor allows the title owner use indicating his or her true ownership, possession is not likely exclusive. *Bryant v. Palmer Coking Coal Co.*, 86 Wn. App. 204, 217, 936 P.2d 1163 (1997).

An adverse possessor must treat the land as if he or she owns it against and not subordinate to the title owner's true interest. *Chaplin*, 100 Wn.2d at 860-61. Thus, the title owner negates hostility by giving the adverse possessor express or implied permission to use or occupy the land. *Id.* at 861-62. Possession is presumed to be permissive but is hostile if the adverse possessor's acts "clearly show actual appropriation to his permanent and exclusive dominion and benefit." *People's Sav. Bank v. Bufford*, 90 Wash. 204, 206-07, 155 P. 1068 (1916) (internal quotation marks omitted).

5

The Brunettos mainly rely on the permissive use doctrine to rebut the exclusive and hostile use elements of adverse possession. Permission may be implied where the title owner allows the adverse possessor's acts out of "neighborly sufferance or acquiescence." *Roediger v. Cullen*, 26 Wn.2d 690, 707, 175 P.2d 669 (1946). But permission is not implied simply because the title owner knows of the adverse possessor's acts and fails to object. William B. Stoebuck, *The Law of Adverse Possession in Washington*, 35 WASH. L. REV. 53, 74 (1960) (citing *Hovila v. Bartek*, 48 Wn.2d 238, 292 P.2d 877 (1956); *Booten v. Peterson*, 47 Wn.2d 565, 288 P.2d 1084 (1955), *overruled on other grounds by Chaplin*, 100 Wn.2d 853); *accord* 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 8.12, at 528 (2d. ed. 2004).

> Finding of fact 2.11 partly states the Thomas family, between 1969 and 1987,
>
> had been in actual possession of and used the property lying West of the assumed boundary exclusively and uninterruptedly. They openly treated the land as their own to the exclusion of anyone else, and in a manner which is consistent with owning a cabin on a lake with some measure of curtilage. . . . They at all times treated the property lying West of the assumed boundary as their own, to the exclusion of all others . . . ."

CP at 97. Conclusions of law 3.2 and 3.3 partly state the Thomas family's acts prove each element of adverse possession by a preponderance of evidence, specifically noting they exercised dominion over the land in a manner that "was at no point permissive but, rather, positively asserted ownership . . . from the outset." CP at 105. To the extent the trial court mislabeled these findings and conclusions, we consider them for what they really are.

6

Witnesses testified the Thomas family built the improvements and cultivated the lawn on what they understood to be their land. Mr. Thomas testified he never asked the Brunettos for their permission to use or occupy the land because he considered it his own. Two neighbors testified while they saw the Thomas family regularly recreating on or around the improvements and caring for the lawn west of the assumed boundary, they never saw the Brunetto predecessors do so. One neighbor testified the Thomas family and the Brunetto predecessors each used and cared for their respective land consistent with the assumed boundary. The trial court found no evidence suggested the Brunetto predecessors ever used or cared for the land west of the assumed boundary, but even if they had, any such acts "would have been extremely episodic." CP at 96-97. This finding is a verity on appeal because the Brunettos did not assign error to it. Additionally, the trial court considered the Brunettos' testimony but disbelieved them. We defer to this witness credibility assessment.

Considering all, a sufficient quantum of evidence exists to persuade a fair-minded, rational person the challenged findings are true. Specifically, the trial court could find the Thomas family treated the land as their own, as an ordinary titled owner in the area would, by generally keeping the Brunetto predecessors off it and exercising dominion over it without the Brunetto predecessors' express permission. Therefore, substantial evidence supports the challenged findings.

These findings support the challenged conclusions. First, the Thomas family's possession was exclusive because they either kept the Brunetto predecessors off the land entirely or allowed them extremely episodic use of it. Either way, the Thomas

7

family did not allow the Brunetto predecessors any use of the land indicating their true ownership. Thus, the Thomas family's possession was as exclusive as the community would expect of an ordinary lake cabin title owner. This satisfies the exclusivity element. Second, the Thomas family's possession was hostile because it clearly showed actual appropriation of the land to their permanent and exclusive dominion and benefit. This indicates the Brunetto predecessors did not allow the Thomas family's possession out of neighborly sufferance or acquiescence but instead knew of it and failed to object. It follows that the Brunetto predecessors did not imply their permission for the Thomas family to use or occupy the land. Thus, the Thomas family treated the land as if they owned it against and not subordinate to the Brunetto predecessors' true interest. This satisfies the hostility element.

In sum, we may not substitute our judgment for that of the trial court under these circumstances. We conclude the trial court did not err by quieting the Brunettos' title under adverse possession. Because the trial court "[a]lternatively" based its ruling on mutual recognition and acquiescence, CP at 106, we do not separately review this portion of the judgment to affirm, *see Green v. Hooper*, 149 Wn. App. 627, 639-40, 205 P.3d 134 (2009) (concluding mutual recognition and acquiescence is a "separate and independent" claim and does not supplement adverse possession in the sense that the latter contains the former in pleading).

## B. Attorney Fees and Costs

The Thomases request attorney fees and costs on appeal under RAP 14.2, 14.3, and 18.1, and RCW 4.84.080(2). We may award appellate costs to "the party that

No. 30663-1-III
*Thomas v. Brunetto*

substantially prevails on review." RAP 14.2. Because the Thomases have prevailed here, we grant their request. Their appellate costs include "statutory attorney fees" of $200 and "reasonable expenses" they incurred for necessary enumerated items. RAP 14.3(a); *see* RCW 4.84.080(2); RAP 18.1(a).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Korsmo, C.J.

Kulik, J.

9