FILED
COURT OF APPEALS
DIVISION II

2014 MAR 11 AM 8:40

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WILLIE E. YOUNG, a widow, | No. 43834-8-II |
| Respondent, | |
| v. | |
| MICHAEL A. CALLAHAM and DIXIE D. CALLAHAM, husband and wife, | UNPUBLISHED OPINION |
| Appellants. | |

WORSWICK, C.J. — Michael and Dixie Callaham appeal the trial court's ruling, which quieted title in favor of Willie Young to an 11 foot wide strip of land between Young's western parcel and the Callahams' eastern parcel. The Callahams argue that they acquired title to the strip by adverse possession. We affirm because the trial court's unchallenged findings of fact support its conclusion that the Callahams did not acquire title to the strip by adverse possession.

## FACTS

Willie Young owned a parcel of land in Tacoma, on which she had lived since approximately 1970. This parcel abutted a parcel to the east, which was later purchased by the Callahams. An old fence was located on Young's parcel, which was built prior to Young's purchase. This old fence ran from north to south, 11 feet west of the legal property line separating Young's western parcel from the eastern parcel. This created an 11 foot wide strip of land between the old fence and the legal property line.

Prior to 1997, Young replaced the old fence with a new fence. Young intentionally built her replacement fence on the same location as the old fence (11 feet west of the legal property

line between the eastern and western parcels) because she did not want her children and grandchildren to fall into a well that she had been told was located immediately east of the fence. Young occasionally dumped yard waste into the strip and picked berries growing there.

In 1997, Michael and Dixie Callaham bought the property to the east of Young with the intent to build a house upon it. However, the Callahams lived on another parcel of property, which was adjacent to the one they purchased in 1997. In 1998, the Callahams cleared their parcel of its shrubbery. Some of that removed shrubbery may have been located on the strip. The Callahams also installed a culvert in a ditch that ran along the north side of the eastern parcel, and laid gravel. A portion of the culvert and gravel occupied the strip.

In 2002 and 2003, the Callahams dug holes into the ground in order to conduct a percolation test on the eastern parcel. Up to three of the holes dug in 2003 may have been located in the strip. The eastern parcel failed the percolation test, forcing the Callahams to change their plans from building a house on the eastern parcel to using the eastern parcel as an extension of their main home's back yard.

Google Earth pictures of the western and eastern parcels taken in May of 2005, November of 2007, April of 2009, and June of 2010, showed vegetation growing in the eastern parcel, but did not show any structures, equipment, vehicles, or evidence of human activity.[1] The trial court found, "The Callahams did not offer any photographs, or other physical or documentary evidence, that they used [the eastern parcel] - or, in particular the [strip] for any purpose after conducting the failed [percolation] tests in 2003 until they removed Young's fence

---

[1] Google Earth is a computer program that allows the user to view satellite images of the earth, with a level of detail allowing one to view individual properties in the United States. *Overview of Google Earth*, Google (February 7, 2014), https://support.google.com/earth/answer/176145?hl=en.

in 2010." Clerk's Papers (CP) at 316. The trial court found that the Callahams' lot was vacant during the period of time between May of 2005 and June of 2010.

In July of 2010, the Callahams began to build on the eastern parcel in earnest. While building on the eastern parcel, the Callahams accidently knocked down a portion of Young's fence. At this time, the Callahams acquired Young's permission to replace Young's fence, and did so. The discussion to acquire Young's permission to replace the fence was the first conversation between Young and the Callahams regarding the property line's location.

In 2010, Young's daughter informed the Callahams that Young wanted the fence moved east eleven feet to the legal property line. The Callahams refused to move the fence, but offered to pay Young $2,000 to $2,500 for the strip.

Young sued the Callahams to quiet title to the strip. The Callahams countersued on grounds that they had acquired title to the strip by adverse possession. Following a bench trial, the trial court ruled that the Callahams did not acquire the strip by adverse possession. The trial court made the following conclusion of law excerpted in relevant part:

> [The Callahams] have failed to show that they have acquired title by adverse possession. Since 2003, the Callahams claim to have considered the vacant lot to which the disputed property is adjacent, as part of the back yard of their residence. *But they have failed to provide evidence that they maintained or used the property in the fashion of a residential back yard. Instead, such use of the property as they have provided evidence has been non-continuous and irregular.* Furthermore, the uncontroverted evidence shows that Young built [Young's] fence to prevent her children and grandchildren from playing on land she considered hazardous—specifically [because of the] well. . . . [*Young*] *continued to use the disputed 11 feet by disposing of yard waste [and] picking blackberries.*

3

No. 43834-8-II

CP at 318 (emphasis added). The trial court quieted title to the strip in favor of Young. The Callahams appeal.[2]

## ANALYSIS

The Callahams do not assign error to any of the trial court's findings of fact, arguing only that the trial court erred in concluding that the Callahams did not acquire title to the strip by adverse possession. The Callahams argue that they adversely possessed the strip from the date that they purchased the eastern parcel in June of 1997 until May of 2011. We disagree.[3]

We analyze adverse possession as a mixed question of law and fact. *Chaplin v. Sanders*, 100 Wn.2d 853, 863, 676 P.2d 431 (1984). The existence of the essential facts is for the trier of fact to decide. *Chaplin*, 100 Wn.2d at 863. However, whether those facts, as the trier of fact found them, constitute adverse possession is a legal question for this court. *Chaplin*, 100 Wn.2d at 863.

We review legal conclusions de novo, determining whether the trial court's findings support its conclusions. *Bingham v. Lechner*, 111 Wn. App. 118, 127, 45 P.3d 562 (2002). Interpretation or construction of a trial court's findings of fact is a question of law. *In re Marriage of Stern*, 57 Wn. App. 707, 712, 789 P.2d 807 (1990). Unchallenged findings are verities on appeal. *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 450, 229 P.3d 735 (2010).

---

[2] At trial, the Callahams also claimed that they had acquired title to the strip by acquiescence and estoppel in pais. The trial court ruled against the Callahams on both of these claims. However, the Callahams only appeal their claim for adverse possession.

[3] Young argues that the Callahams waived their challenge to conclusion of law B-1, which concluded that Young has title to the strip. But, title to the strip turns on whether the Callahams adversely possessed the strip, and this is the issue the Callahams raise on appeal. Thus the Callahams' argument regarding adverse possession sufficiently addresses the trial court's conclusion that Young has title to the strip.

When the trial court's findings are susceptible of two constructions, one that supports the conclusions of law and one that does not, we construe the findings in the manner that supports the trial court's conclusions of law. *Lincoln Shiloh Assocs., Ltd. v. Mukilteo Water Dist.*, 45 Wn. App. 123, 131, 724 P.2d 1083 (1986). We do not read words or phrases from the findings and conclusions in isolation but, instead, read the findings and conclusions as a whole to ascertain their meaning. *See Callan v. Callan*, 2 Wn. App. 446, 449, 468 P.2d 456 (1970).

Under adverse possession, a person without color of title acquires legal title to another's land if, for at least 10 continuous years, he or she possesses the land in a manner that is (1) actual and uninterrupted, (2) open and notorious, (3) exclusive, and (4) hostile. *See* RCW 4.16.020(1); *Gorman v. City of Woodinville*, 175 Wn.2d 68, 71-72, 283 P.3d 1082 (2012). The law does not favor prescriptive rights, and as such the party claiming adverse possession (here the Callahams) must prove each element by a preponderance of the evidence to prevail. *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 238-39, 23 P.3d 520 (2001); *Teel v. Stading*, 155 Wn. App. 390, 393-94, 228 P.3d 1293 (2010).

We hold that the findings of fact support the conclusion that the Callahams failed to prove that they possessed the land for ten consecutive years in a manner that was continuous and uninterrupted, open and notorious, or exclusive.

## I. CONTINUOUS AND UNINTERRUPTED POSSESSION

The Callahams argue that the trial court erred because it applied the wrong legal standard by ruling that the Callahams' use of the strip had to be in the "fashion of a residential backyard." Br. of Appellants at 13. We disagree.

Under adverse possession, the possessor must possess the land in a manner that is actual and uninterrupted for the statutory period of ten years. *Gorman*, 175 Wn.2d at 71-72. This standard is the standard that the trial court applied to the Callahams' case.

The trial court said that the Callahams' claim fails because the Callahams "failed to provide evidence that they maintained or used the property in the fashion of a residential back yard." CP at 318. However, a more complete quote shows that the trial court applied the correct standard: "Since 2003, the Callahams claim to have considered the vacant lot to which the disputed property is adjacent, as part of the back yard of their residence. But they have failed to provide evidence that they maintained or used the property in the fashion of a residential back yard. *Instead, such use of the property as they have provided evidence has been non-continuous and irregular*." CP at 318 (emphasis added). Therefore, the trial court applied the proper standard to find that the Callahams' use of their land was not continuous and uninterrupted, and thus the trial court did not err.

## II. OPEN AND NOTORIOUS POSSESSION

The Callahams argue that they possessed the strip in an open and notorious manner for ten consecutive years. We disagree.

The "open and notorious" element of adverse possession requires proof that (1) the true owner had actual notice of the adverse use throughout the statutory period, or (2) the claimant used the land in a way that would lead a reasonable person to assume the claimant was the owner. *Shelton v. Strickland*, 106 Wn. App. 45, 51-52, 21 P.3d 1179 (2001). The necessary occupancy and use need be of the character that a true owner would assert in view of the property's nature and location. *Anderson v. Hudak*, 80 Wn. App. 398, 403, 907 P.2d 305 (1995).

6

The trial court properly concluded from its findings that the Callahams failed to prove that they possessed the land in an open and notorious manner for ten consecutive years.

The trial court found that the Callahams did not discuss the property line with Young until 2010. This supports that Young did not actually know that the Callahams claimed to possess the land until 2010. Thus to establish open and notorious possession, the Callahams have to prove that they possessed the land in a manner that would lead a reasonable person to assume that the Callahams owned the strip. *Shelton*, 106 Wn. App. at 51-52.

The Callahams purchased the land in 1997. The trial court found that the Google maps showed no structures, equipment, vehicles, or evidence of human activity from May of 2005 through June of 2010. The trial court further found, "The Callahams did not offer any photographs, or other physical or documentary evidence, that they used the [eastern parcel] - or, in particular the [strip] - for any purpose after conducting the failed [percolation] tests in 2003 until they removed Young's fence in 2010." CP at 316.

The Callahams dug holes that may have been located in the strip for their 2003 percolation test. However, those holes were dug prior to 2005, and the findings do not support that the Callahams maintained the holes beyond the time that they discovered that they failed the percolation test in 2003.

Part of the Callahams' culvert and gravel were on the strip. However, because these items occupied only a fraction of the strip, it constituted an incursion on the land that was far too minor to constitute an open and notorious possession, because it would not signal to a reasonable person that the Callahams owned the strip.

7

The trial court's finding that the Callahams did not use the eastern parcel between May of 2005 and June of 2010, in combination with its finding that the Callahams purchased the eastern parcel in 1997, supports the conclusion that the Callahams did not prove by a preponderance of the evidence that they had ten years of possession in a manner that was open and notorious. Thus the trial court did not err in concluding that the Callahams failed to prove with a preponderance of the evidence that they possessed the land in a manner that was open and notorious for ten consecutive years.

### III. EXCLUSIVE POSSESSION

The Callahams argue that their possession of the strip was exclusive. We disagree.

The "exclusive" element of adverse possession requires proof that an adverse possessor's dominion over the land was as exclusive as the community would expect of an ordinary title owner in light of the land's nature and location. *Crites v. Koch*, 49 Wn. App. 171, 174, 741 P.2d 1005 (1987). If the adverse possessor allows the title owner an occasional transitory use as the community would expect an average owner to allow a neighbor, possession is likely exclusive. *Lilly v. Lynch*, 88 Wn. App. 306, 313, 945 P.2d 727 (1997). But if the adverse possessor allows the title owner use indicating his or her true ownership, possession is not likely exclusive. *See Bryant v. Palmer Coking Coal Co.*, 86 Wn. App. 204, 217, 936 P.2d 1163 (1997).

In this case, Young periodically dumped grass clippings into the strip, and periodically picked the berries from the strip. Dumping yard waste onto land and entering land to take its berries constitutes more than a mere transitory use that the community would expect an average owner to allow a neighbor. *See Lilly*, 88 Wn. App. at 313. Rather, these acts constitute use consistent with true ownership. Thus the Callahams failed to provide proof that its dominion

8

No. 43834-8-II

over the land was as exclusive as the community would expect of an ordinary title owner in light of the land's nature and location. *Crites*, 49 Wn. App. at 174.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Johanson, J.

_____
Bjorgen, J.

9