# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STEVEN M. CROSETTI and CARRIE A. CROSETTI, husband and wife, | No. 53756-7-II |
| Appellants, | |
| v. | |
| ALEXANDER PAWLOFF and JANE DOE PAWLOFF, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, J. – Steven and Carrie Crosetti appeal the trial court's order denying their motion to reconsider the trial court's order quieting title in Alexander Pawloff, the injunction prohibiting the Crosettis from entering Pawloff's property, and the trial court's order granting attorney fees to Pawloff. The Crosettis argue that the trial court erred in concluding that Pawloff's use of the property established the elements of adverse possession, by denying their timber trespass claim, and in not addressing their trespass claim. The Crosettis also contend that the trial court erred in awarding Pawloff attorney fees and costs.

We hold that the trial court erred in quieting title in Pawloff and in failing to address the Crosettis' trespass claim, but properly denied the Crosettis' timber trespass claim. We further hold that the trial court erred in awarding Pawloff attorney fees and costs.

Accordingly, we affirm in part, reverse in part and remand for further proceedings in accordance with this opinion.

FACTS

I. BACKGROUND

In June 2017, the Crosettis purchased real property (lot six). Pawloff owned the adjacent property to the south (lot five).

The property in dispute in this case is a wedge shape piece of land on the Crossetis' lot. Lot six and lot five share a common property line that runs in a diagonal line from the southwest to the northeast. When the Crosettis filed the lawsuit in this case, there was a "rock wall," which was approximately one foot high and two feet wide, that started at the property line and cut at a northeast angle into the Crosettis' lot. Clerk's Papers (CP) at 162. The rock wall ended approximately 11 feet north of the property line. At the northeast corner of the rock wall there were juniper trees that continued the line, started by the rock wall, to the eastern border of lot six. There was also bamboo located approximately where the rock wall started at the property line and about one to four feet south of the rock wall. The bamboo ran parallel to the rocks for several feet. To the east of the bamboo, and still south of the rock wall, there were six pine trees that ran parallel to the rock wall. The following map depicts the disputed property.



DETAIL OF OCCUPATION

CORNER NOTES

C8 - FOUND 1" BOLT IN CONCRETE WALL
S79°33'31"E 0.20' FROM CALCULATED
POSITION

Exhibit 1A.[1]

After the Crosettis purchased lot six, they started to make extensive improvements, including to the area bordering Pawloff's property. The renovations included removing fir tree saplings from all over their property and adding multiple retaining walls. Prior to the Crosettis' renovations, there was a steep slope that was north of the property line they shared with Pawloff. The slope had a natural forest appearance consisting of bushes, ferns and saplings. The Crosettis flattened out the slope, added a retaining wall, and cleared the plants, including the roots to keep the plants from returning. The Crosettis also intended to install a fence around their property, so they commissioned a survey to ascertain the property lines.

Mr. Crosetti notified Pawloff that the Crosettis were thinking about putting up a fence and they had requested a survey of the property. At that time, Mr. Crosetti also notified Pawloff that the Crosettis believed Pawloff was encroaching on their land. Mr. Crosetti was concerned about a

---

[1] The above map is taken from exhibit 1A and is cropped to highlight the disputed property.

possible encroachment because when he walked the property line a couple of months earlier, he noticed what appeared to him to be a new line of rocks close to the property line he shared with Pawloff.

Shortly after the surveyors completed their work and placed survey markers, Pawloff removed the survey markers and installed an orange plastic fence that ran along the rock wall.

In April 2018, the Crosettis filed suit alleging, inter alia, that the property line between lots five and six is the line depicted in the survey commissioned by the Crosettis, and that Pawloff had trespassed when he installed the plastic fence. Pawloff answered and made a counterclaim of adverse possession with regard to the disputed wedge of land. Pawloff alleged, inter alia, that the property line has shifted north because he had adversely possessed the wedge shaped land, described above, through his maintenance of that land for the last twenty years.

## II. PAWLOFF'S USE OF LOT FIVE

Pawloff purchased his property on April 1, 1998 from K. J. Koranda. Koranda owned the property for approximately five to seven years before selling it to Pawloff. Shortly after purchasing the property, Pawloff noted there was a rock wall and fence on the edge of his property. Pawloff believed the rocks and the fence indicated where the property line was. As a result of that understanding, Pawloff maintained the land south of the wall, while the neighbors living on lot six, at the time Pawloff moved in, maintained the land north of the wall.

When Pawloff moved in, it did not appear to him that Koranda had maintained the property. The yard was overgrown, and the rock wall had flattened out. The wooden fence, that was originally on top of the rock wall, had been knocked over and sections of the wood were rotting.

Initially, Pawloff focused on clearing the yard of any major debris. In 1998, Pawloff planted bamboo in the disputed property. In 1999 and 2000, Pawloff planted additional bamboo within the disputed property. In 2000, Pawloff planted the six pine trees that were located in the disputed property. Pawloff testified that he was particularly interested in cultivating the pine trees and bamboo in the disputed property.

Between 2008 and 2010, Pawloff extended the rock wall because he added rocks that he found while renovating his property. In 2014 or 2015, Pawloff laid beauty bark down in the disputed area. Pawloff also planted a number of juniper trees along the east side of his property. While planting the juniper trees, he came across 50 to a 100 baseball sized rocks, which he added to the rock wall. In 2016, Pawloff started transferring some of the juniper trees from the side of his property to the northeastern corner of the disputed property.

### III. PRIOR OWNERSHIP AND USE OF LOT SIX

The Crosettis purchased lot six in June 2017 from Lazlo and Joelle Csuha. The Csuhas purchased the property in 2005.

### A. THE CSUHAS' USE OF LOT SIX FROM 2005 TO 2017

The Csuhas owned the property from 2005 to 2017. During that time, nothing led Lazlo Csuha (Csuha) to believe that Pawloff was claiming a portion of his property.

When the Csuhas moved into the house on lot six, Csuha noted that, in general, the grounds of the property had not been maintained. In particular, the vegetation in and around the disputed property grew quickly, and Csuha's friends described it as a jungle. In the summer of 2005, right after the Csuhas bought the property, Csuha weed whacked the whole property down to the ground. This cleaning included clearing the property in dispute up to Pawloff's grass.

5

In 2006, Csuha again completely cleared lot six including the disputed property up to Pawloff's grass. The cleaning took a whole weekend, and Csuha removed wild grass, small trees, brush, bushes, and any vegetation that he considered unattractive. Csuha completely cleared the vegetation down to the ground. Csuha used a string trimmer to remove most of the vegetation, but he also used a chain saw to remove larger trees and bushes. However, Csuha did not cut down natural pine trees and bamboo. Csuha also kept, and pruned, the ferns that were within the disputed property. Csuha conducted this thorough type of clearing two more times while he owned the property. Csuha cleared it in 2016 right before he sold lot six to the Crosettis, and one other time, prior to 2016.

Additionally, Csuha cleared the disputed property with a string trimmer. Csuha cut the wide grass,[2] low-laying bushes, and brush completely down to the ground. In order to remove the brush, Csuha would sometimes have to use the blade setting on his trimmer instead of just the string. When Csuha weed whacked within the disputed property, he cleared around the pine trees and a bit further to where to the property line was, he thought it was approximately a two-foot radius around the pine trees.

B. THE CROSETTIS' USE OF LOT SIX FROM 2017 TO PRESENT

The Crosettis bought lot six from the Csuhas in June 2017. When the Crosettis moved in, the portion of the property adjacent to lot five was covered in bushes, ferns, and plants. Mr. Crosetti described it as maintained, but it had a natural look. Mr. Crosetti did not see any indication that Pawloff was encroaching onto his property. Shortly after moving in, the Crosettis hired a

---

[2] Csuha explained he used the term "wide grass" to differentiate it from the type of grass found in a manicured backyard. Verbatim Report of Proceedings (VRP) (July 2, 2019) at 37.

landscaping crew to come in to bring everything down to the ground because they wanted to work with a clean slate.

Mr. Crosetti noticed that there were six small pine trees on his property, but he assumed they occurred naturally because they were under a 100-foot tree and there were countless saplings of the same species of tree all over his property. Regarding the rock wall, Mr. Crosetti observed some rocks initially but characterized the rocks as a mere handful of rocks that were thrown around. Mr. Crosetti believed that the rock wall depicted in the survey and later photos was installed after the Crosettis bought the property. Mr. Crosetti only became concerned about the rocks for the first time, a few months after he moved in, while he was walking the property line. Mr. Crosetti waited to talk to Pawloff about the rocks because he wanted the survey to be completed first.

## IV. HAZELNUT TREE

Shortly after the Crosettis moved in, Mrs. Crosetti was overseeing renovations inside the house while watching her granddaughter. Mrs. Crosetti heard her granddaughter talking to someone outside, so Mrs. Crosetti went to check on her. Mrs. Crosetti observed Pawloff stacking branches next to a stump. The granddaughter was talking to Pawloff and she introduced Pawloff to Mrs. Crosetti. Mrs. Crosetti acknowledged Pawloff and went back inside. Mrs. Crosetti did not observe Pawloff cutting down a tree, and she did not observe a saw or any other tools. At the time, Mrs. Crosetti did not confront Pawloff about being on her property or what he was doing on her property.

Later that day, Mr. Crosetti went out on the deck and immediately noticed that the hazelnut tree was absent. Although Mrs. Crosetti had noticed that something looked different about the area,

she did not realize that a tree was missing. At that time, it occurred to Mrs. Crosetti that Pawloff must have cut down the tree and what she had seen was Pawloff cleaning up after. Mr. Crosetti planned on discussing the hazelnut tree with Pawloff, but delayed because the Crosettis were in the middle of remodeling their house.

Pawloff remembered speaking to the Crosettis' granddaughter and Mrs. Crosetti coming out to check on her granddaughter. And Pawloff acknowledged that he removed a plant on the Crosettis' property, north of the rock wall, however, he denied even being near the hazelnut tree at that time, and he denied cutting down a tree. Instead, Pawloff claimed he was removing branches from a scrub plant that was basically dead and had been growing into his pine trees. Pawloff claimed that the plant he pruned did not resemble a hazelnut tree.

## V. PROCEDURAL HISTORY

In April 2018, the Crosettis filed suit, seeking a declaratory judgment to quiet title and confirm their ownership of the disputed property and an injunction to prevent Pawloff from entering their property. Additionally, the Crosettis alleged Pawloff trespassed on their land when he installed the plastic fence, and they alleged timber trespass based on their belief that Pawloff had cut down their hazelnut tree. The Crosettis also requested attorney fees and costs.

In answering the Crosettis' complaint, Pawloff filed a counterclaim seeking a declaratory judgment to quiet title to the disputed property in him, alleging that he acquired the land through adverse possession. In addition, Pawloff sought injunctive relief to prevent the Crosettis from entering his property.

The case proceeded to a bench trial. At trial, the surveyor, the Crosettis, Csuha, Pawloff, and Pawloff's mother testified consistently with the facts set forth above.

8

No one with firsthand knowledge about Koranda's ownership or use of lot five testified at trial. Pawloff testified that Koranda owned the property for approximately five to seven years. Pawloff acknowledged that he did not actually know if Koranda or a previous owner erected the rock wall or what the rock wall's original purpose was. However, Pawloff testified that Koranda had erected the fence on the rock wall. Pawloff further testified that he believed that Koranda had used the rock wall and fence to prevent her dog from escaping her property. Pawloff did not testify further regarding Koranda's use of the property in dispute.

After the bench trial, the trial court found that Koranda had owned lot five for eight years, up until 1998, and it found that she had used the disputed property in a manner that was actual and uninterrupted, exclusive, hostile, and open and notorious.[3] Additionally, the court found that Pawloff's use of the disputed property was exclusive, actual and uninterrupted, open and notorious, and hostile.[4] The court also found that Csuha, the Crosettis' predecessor, had cleared the disputed property three times, once when he purchased lot six, once before he sold lot six, and once between those two times.

The court concluded that Pawloff acquired the disputed property by adverse possession and quieted title to this property in Pawloff. The trial court granted Pawloff's request for an

---

[3] Koranda's use was relevant because Pawloff could apply a predecessor's use of the property to satisfy the 10-year requirement for his adverse possession claim.

[4] The trial court incorrectly labeled its findings that Koranda and Pawloff had met the elements of adverse possession as "conclusion of law" when the trial should have labeled them as "findings of fact." *See Harris v. Urell*, 133 Wn. App. 130, 137-39, 135 P.3d 530 (2006); *Anderson v. Hudak*, 80 Wn. App. 398, 401-02, 907 P.2d 305 (1995). The trial court's labeling error has no bearing on how we review the record or on our analysis. *Willener v. Sweeting,* 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

injunction prohibiting the Crosettis from entering Pawloff's property, including the property in dispute.

Additionally, the trial court found Pawloff's testimony that he did not cut down the hazelnut tree to be credible, and it concluded that the evidence did not support the Crosettis' timber trespass claim. The court did not address the Crosettis' trespass claim, wherein the Crosettis alleged that Pawloff trespassed onto their property when he erected the plastic fence. Finally, the trial court ordered the Crosettis to pay Pawloff's attorney fees and costs.

The Crosettis appeal.

## STANDARD OF REVIEW

Where a trial court has weighed the evidence, our task on review is "limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law." *Org. to Pres. Agric. Lands v. Adams County*, 128 Wn.2d 869, 882, 913 P.2d 793 (1996). The issue of whether the findings support the conclusions is reviewed de novo. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341-42, 308 P.3d 791 (2013).

If a party does not challenge a finding, that finding is a verity on appeal. *Herring v. Pelayo*, 198 Wn. App. 828, 833, 397 P.3d 125 (2017) (citing *Nguyen v. City of Seattle*, 179 Wn. App. 155, 163, 317 P.3d 518 (2014)). If a party challenges a trial court's finding of fact, then a reviewing court considers whether that finding is supported by substantial evidence. *In re Welfare of A.W.*, 182 Wn.2d 689, 711, 344 P.3d 1186 (2015) (citing *In re Dependency of K.S.C.,* 137 Wn.2d 918, 925, 976 P.2d 113 (1999)). Substantial evidence is "a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." *Trotzer v. Vig*, 149 Wn. App. 594, 608, 203 P.3d

1056 (2009). A trial court's determination regarding the veracity of a witness' testimony, conflicting testimony, and the persuasiveness of evidence presented at trial is not disturbed on appeal. *McCoy v. Kent Nursery, Inc., 163 Wn. App. 744, 769, 260 P.3d 967 (2011).*

If a finding of fact is erroneously labeled as a conclusion of law, the reviewing court will review that "conclusion of law" as a finding of fact. *Willener v. Sweeting,* 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

## DISCUSSION

### I. ADVERSE POSSESSION

The Crosettis argue that the trial court erred in concluding that Pawloff acquired title to the disputed property through adverse possession. They assert that the trial court's findings regarding Koranda's use and possession of the property were not supported by substantial evidence and therefore do not assist Pawloff in establishing adverse possession. The Crosettis further contend that Pawloff's use of the disputed property alone, when not coupled with Koranda's use, did not satisfy each of the requisite elements of adverse possession.

Pawloff responds that between Koranda's use and his own, there was substantial evidence to support the trial court's findings, and the findings were sufficient to support its conclusion that Pawloff had adversely possessed the property in dispute. We agree with the Crosettis.

### A. LEGAL PRINCIPLES

Under the doctrine of adverse possession an individual may claim legal title to another person's land if the claimant uses that person's land for at least 10 years in a manner that is (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. *Gorman v. City of Woodinville*, 175 Wn.2d 68, 71, 283 P.3d 1082 (2012). The claimant has the burden of proving

each adverse possession element by a preponderance of the evidence. *Maier v. Giske*, 154 Wn. App. 6, 18, 223 P.3d 1265 (2010); *Teel v. Stading*, 155 Wn. App. 390, 394, 228 P.3d 1293 (2010).

*"Adverse possession is a mixed question of law and fact." Anderson v. Hudak*, 80 Wn. App. 398, 401-02, 907 P.2d 305 (1995). "[T]he trier of fact . . . determine[s] from conflicting evidence the existence of facts necessary to constitute adverse possession," and we review such findings for substantial evidence. *Peeples v. Port of Bellingham*, 93 Wn.2d 766, 773, 613 P.2d 1128 (1980), *overruled on other grounds by Chaplin v. Sanders*, 100 Wn.2d 853, 676 P.2d 431 (1984). In turn, "whether the facts constitute adverse possession is for the court to determine as a matter of law." *Anderson*, 80 Wn. App. at 402.

Once the claimant has met all four elements for adverse possession throughout the 10-year period, title to the property automatically passes to the claimant. *Gorman*, 175 Wn.2d at 72. The claimant may rely on a predecessor's in interest use of the property to meet the 10-year requirement. *Acord v. Pettit*, 174 Wn. App. 95, 103, 302 P.3d 1265 (2013). A claimant is not required to file a quiet title action to acquire title to the land the claimant adversely possessed. *Gorman*, 175 Wn.2d at 74.

B. ANALYSIS

*1. Koranda's Possession of Lot Five*

The trial court found that Koranda owned lot five for eight years and concluded that she used it in a manner that met the elements of adverse possession. As such, Pawloff only needed to establish that he used the disputed property in a similar manner for an additional two years if the trial court's finding about Koranda's use was supported by substantial evidence. The Crosettis argue that the trial court's findings that Koranda owned the property on lot five for eight years and

used the disputed property in a manner that would help establish the elements of Pawloff's adverse possession claim were not supported by substantial evidence. Thus, the Crossetis contend, the trial court erred when it concluded that Pawloff could combine his first two years of ownership of lot five with Koranda's possession of lot five to establish his claim of adverse possession.[5]

We conclude that the trial court's findings regarding the length that Koranda owned lot five and the character of Koranda's use of the disputed property were not supported by substantial evidence. Therefore, the issue of whether Pawloff acquired title through adverse possession must be based on consideration of Pawloff's use alone, with the statutory period beginning to run at the point when Pawloff purchased the property.

a. Duration of Koranda's Ownership of Lot Five

Here, substantial evidence did not support the trial court's finding that Koranda owned lot five from 1990 to 1998. The only evidence regarding the length of Koranda's ownership was Pawloff's testimony. And Pawloff did not know how long Koranda owned the property, testifying that it was somewhere between five and seven years. Pawloff did not introduce any other evidence, such as property records, to establish how long Koranda owned the property. Therefore, we conclude the trial court erred in finding that Koranda owned lot five for eight years because there is no evidence in the record that supports that finding. *A.W.*, 182 Wn.2d at 711.

---

[5] Pawloff would have satisfied the 10-year requirement in 2000, five years before the Csuhas moved in. Therefore, any challenge brought by the Crosettis based off of Csuha's use of the disputed property would be irrelevant.

b. Koranda's Use

The trial court also concluded Koranda had possessed the disputed property "exclusively, actually and in an uninterrupted manner, openly, notoriously and in a manner hostile to all other interests." CP at 164. Even though the trial court labeled this finding as a conclusion of law, this is a finding of fact. *See Harris v. Urell*, 133 Wn. App. 130, 137-39, 135 P.3d 530 (2006); *Anderson*, 80 Wn. App. at 401-02. Therefore, we will review this finding for substantial evidence. *Willener,* 107 Wn.2d at 394.

The only evidence establishing Koranda's use of lot five and the disputed property was Pawloff's testimony, and Pawloff's testimony was insufficient to support the trial court's finding that Koranda had possessed the disputed property "exclusively, actually and in an uninterrupted manner, openly, notoriously and in a manner hostile to all others." CP at 164. Pawloff testified that the rock wall and fence were present when he purchased the property and that he believed that the rock wall and fence were used to keep Koranda's dog on Koranda's property. However, Pawloff also testified that when he moved in the yard was overgrown, the fence had been knocked over, and the rock wall had been scattered. Pawloff did not present any further evidence regarding Koranda's use of the rock wall, the fence, or the disputed property.

Pawloff's testimony regarding the state of disrepair of the disputed property when he purchased lot five contradicts the trial court's finding that Koranda's use was open and notorious. In fact, Pawoff's testimony that the yard was not maintained tends to show that Koranda was not using the disputed property at all, much less in a manner that would establish the elements of adverse possession.

In addition, the fact that Koranda may have used the rock wall and fence to keep her dog inside her property is not, on its own, sufficient to establish that her use was hostile or exclusive. *See ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 759, 774 P.2d 6 (1989) (holding that, "use alone does not necessarily constitute possession. The ultimate test is the exercise of dominion over the land in a manner consistent with actions a true owner would take.")

Because there is insufficient evidence to establish exactly how long Koranda owned lot five or how she utilized the disputed property, the trial court erred in finding that Koranda owned lot five for eight years, and that her use could help satisfy the elements of Pawloff's adverse possession claim. Therefore, whether Pawloff adversely possessed the disputed property must be based on Pawloff's possession and use alone.

*2. Exclusive Possession by Pawloff*

The Crosettis argue that the trial court erred in concluding that Pawloff acquired title to the disputed property through adverse possession because Pawloff's use of the disputed property was not exclusive. The Crosettis contend that the trial court's finding that Pawloff's use was exclusive was contradicted by its finding that Csuha had cleared the disputed property three times while he owned lot six.

Pawloff responds that Csuha's use was insufficient to diminish Pawloff's exclusive use. Pawloff argues that limited and transitory actions by a true owner do not disrupt a claimant's exclusive use, and Csuha's use of the disputed property was limited.[6] We agree with the Crosettis.

---

[6] Pawloff challenges the credibility of Csuha's testimony. But the trial court, the fact finder in the case, is the sole judge of witness credibility, and we defer to the fact finder on issues of conflicting testimony and the weight and persuasiveness of the evidence. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014) (quoting *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)). Therefore, we decline to reconsider Csuha's credibility.

a. Legal Principles

To establish adverse possession of another's land, the claimant must establish exclusive possession of the disputed property. *Crites v. Koch*, 49 Wn. App. 171, 173-74, 741 P.2d 1005 (1987). Exclusive possession does not need to be absolute. *Id.* at 174. The claimant only must use the property as a true owner would under the circumstances. *Id.*

"Trifling encroachments" by the true owner will not negate the claimant's exclusive use. *Id.* at 175. An occasional or transitory use by the true owner typically will not disrupt the claimant's exclusive use *if* the claimant permits the use as a "'neighborly accommodation.'" *Harris*, 133 Wn. App. at 138 (quoting *Lilly v. Lynch*, 88 Wn. App. 306, 313, 945 P2d 727 (1997)). However, if the true owner uses the land in a manner that indicates ownership, the claimant cannot establish the exclusivity element. *Lilly*, 88 Wn. App. at 313. This element is informed by the "nature and location of the land" and how an owner would use that type of property. *Crites*, 49 Wn. App. at 174.

b. Analysis

Here, the trial court's conclusion that Pawloff maintained exclusive use of the disputed property is undermined by its unchallenged finding that Csuha cleared the disputed property three times while he owned lot six. The court found Csuha first cleared the disputed property when Csuha purchased lot six and then when he was selling lot six and one other time while living there.

Pawloff contends that three clearings over twelve years is too limited to negate a finding that Pawloff exclusively used the property. But Csuha's actions had a significant impact that a true owner would not allow. The relevant consideration is not merely the length of time the true owner spent on the disputed property, but whether the action taken while on the disputed property is an

action that the claimant would allow a neighbor take. *Harris*, 133 Wn. App. at 138; *Crites*, 49 Wn. App. at 175.

When Csuha cleared the disputed property, he weed whacked the grass and cut brush down to the ground. Csuha also used a chain saw to remove larger trees and bushes. Csuha removed any vegetation that he did not think was attractive without any consideration for what vegetation Pawloff wanted to keep. This intrusion is beyond a "trifling encroachment." *Crites*, 49 Wn. App. at 175. This is especially true in this case given that Pawloff was particularly interested in cultivating the pine trees and bamboo in the disputed property. A true owner would not allow a neighbor to indiscriminately remove vegetation when that removal would endanger the plants the true owner is attempting to cultivate and maintain.

Additionally, allowing a neighbor to maintain one's own property is not a neighborly accommodation to that neighbor. Courts consider whether the action that the claimant is allowing is the "type of use permitted by the community as a neighborly courtesy." *Id.* at 175-76. This "neighborly accommodation" is an allowance by the claimant to the true owner for the true owner's benefit. *Lilly*, 88 Wn. App. at 315 (determining "a true owner would have allowed a friendly neighbor to use the ramp regularly without asking permission each and every time."); *Crites*, 49 Wn. App. at 175-76 (allowing the true owners to use the property as a shortcut and to park is a "neighborly courtesy" expected of an owner). It is, typically, not a neighborly accommodation to the neighbor to allow that neighbor to take care of one's own property. Therefore, we conclude that Csuha's use of the disputed property is beyond what an owner would allow as a neighborly courtesy.

Pawloff's reliance on *Harris*, and in particular on the court's statement that felling a tree is an occasional or transitory use that would not defeat exclusivity, is unavailing. *Harris* is not controlling or persuasive in this case. *Harris* noted in passing that felling *one* tree is an example of occasional, transitory use that is permitted as a neighborly accommodation. *Harris*, 133 Wn. App. at 138. However, the reviewing court in *Harris* determined when the trial court evaluated the exclusivity element, it considered Harris' testimony to be credible, and Harris had testified that the tree in question was not located in the disputed area. *Id.* at 138-39. Therefore, whether the felling of the tree disrupted exclusive use was not at issue in that case.

Additionally, this case is distinguishable from *Harris* because *Harris* involved only one tree. *Id.* at 138. And there are no details in *Harris* about the type of tree that was felled, whether the area was maintained, or the nature of the area. *Id.* Here, Csuha's maintenance involved removing grass, brush, and any other vegetation Csuha did not want to remain, in an area that Pawloff was also attempting to maintain and cultivate specific types of vegetation. These factors are critical because courts must consider the "nature and location of the land" when determining whether the exclusivity element is met. *Crites*, 49 Wn. App. at 174. Additionally, felling a tree is not a prerequisite to a finding that the true owner's use went beyond occasional and transitory. Therefore, *Harris*' discussion regarding felling a single tree is not controlling in this case.

Aside from finding broadly that Pawloff's use was exclusive, the trial court made no other affirmative findings that tend to show Pawloff used the property to the exclusion of the true owner. The trial court did, however, make an affirmative finding that undercuts both its finding that Pawloff's use was exclusive and, ultimately, its conclusion that Pawloff's use satisfied the elements of adverse possession.

*3. 10-Year Period*

Here, the trial court erred in concluding Pawloff's use satisfied the elements of adverse possession for a 10-year period. A claimant must meet all four adverse possession requirements concurrently for 10 consecutive years. *Acord*, 174 Wn. App. at 103; *Chaplin*, 100 Wn.2d at 857.

As discussed above, the trial court's finding regarding the length of time Koranda owned lot five, and its finding regarding how Koranda used the property, were not supported by substantial evidence. Therefore, Koranda's use cannot be counted in examining whether Pawloff's use meets the 10-year requirement. Instead, the 10-year requirement must start on or after April 1, 1998, when Pawloff purchased his property.

Assuming that the 10-year requirement began to run April 1, 1998, the required 10-year period was interrupted by Csuha's clearing of the disputed property in 2006. It was again interrupted sometime between 2006 and 2016 when Csuha cleared the property a second time. Finally, it was interrupted for a third time when Csuha cleared the property prior to selling it in 2016. Therefore, the trial court erred in finding that Pawloff established the exclusive use element of adverse possession for a 10-year period between the first and last clearing.

Because the trial court erred in finding that Pawloff's use met the necessary elements for the 10-year period, the trial court erred in concluding that Pawloff had proven his adverse possession claim. Therefore, we conclude the trial court erred in quieting title to the disputed

property in Pawloff and erred in granting Pawloff an injunction that prohibited the Crosettis from entering the disputed property.[7]

### III. TIMBER TRESPASS CLAIM

The Crosettis challenge the trial court's conclusion that they did not prove their timber trespass claim because they presented sufficient evidence to support their claim. In effect, the Crosettis argue the trial court weighed the evidence incorrectly and should have found that Pawloff's testimony that he did not cut down any trees on the Crosettis' property was not credible. The Crosettis also argue that the trial court erred by failing to make a finding that Mrs. Crosetti observed Pawloff carrying off branches.

Pawloff responds that the trial court's conclusion that the Crosettis did not prove their timber trespass claim was supported by its findings, and the findings, in turn, were supported by substantial evidence. Pawloff notes that no one witnessed Pawloff cut down the hazelnut tree and Mrs. Crosetti only speculated that the branches Pawloff was carrying were from the hazelnut tree. We agree with Pawloff.

On appeal the relevant question is not, as the Crosettis claim, whether there was sufficient evidence to support the plaintiff's claim, but whether there is substantial evidence to support the trial court's findings and whether those findings support the trial court's conclusion. *Org. to Pres. Agric. Lands*, 128 Wn.2d at 882. Here, the trial court's conclusion was sufficiently supported by its findings. Pawloff testified that he did not cut down the hazelnut tree on the Crosettis' property,

---

[7] The Crosettis also argue that Pawloff failed to sufficiently describe the disputed property in his counterclaim when he asserted adverse possession. Because the trial court erred in determining Pawloff proved his adverse possession claim, we decline to consider whether Pawloff's description in his counterclaim was sufficiently descriptive.

and the trial court, by incorporating this assertion by Pawloff into its finding of fact 17, found this testimony credible. Moreover, the Crosettis do not challenge this finding of fact, and it is therefore it is verity on appeal. *Herring*, 198 Wn. App. at 833. This finding, in turn, supports the trial court's conclusion that the Crosettis' timber trespass claim failed.

The Crosettis ask us to reconsider evidence they provided to the trial court and arrive at a different conclusion. The Crosettis' argument lacks merit because it is not the province of this court to "reweigh or rebalance competing testimony and inferences even if we may have resolved the factual dispute differently." *Bale v. Allison*, 173 Wn. App. 435, 458, 294 P.3d 789 (2013).

## IV. TRESPASS CLAIM

The Crosettis argue that the trial court erred when it did not address the Crosettis' trespass claim regarding Pawloff's construction of the plastic fence. The Crosettis contend that Pawloff is liable for the damages he caused by erecting a fence on the Crosettis' property.[8] We conclude the trial court erred by not addressing the Crosettis' trespass claim.

Following a bench trial, a trial court must enter findings of fact and conclusions of law. CR 52. If the trial court fails to include findings and conclusions, the proper remedy is to remand to the trial court so the trial court can enter adequate findings and conclusions of law. *Columbia State Bank v. Invicta Law Grp. PLLC*, 199 Wn. App. 306, 323, 402 P.3d 330 (2017). Here, the trial court, in light of its decision to quiet title in Pawloff, failed to address the Crosettis' trespass claim and failed to enter findings of fact and conclusions of law.

---

[8] For the first time in their reply brief the Crosettis attempt to include Pawloff's entrance onto their land to remove vegetation as a part of their trespass claim. We decline to consider this new argument because an appellate court does not consider an issue raised for the first time in a reply brief. *Ainsworth v. Progressive Cas. Ins. Co.*, 180 Wn. App 52, 78 n.20, 322 P.3d 6 (2014).

Therefore, we remand to the trial court, so it can address the Crosettis' trespass claim and make any necessary findings of fact and conclusions of law.

## V. ATTORNEY FEES AND COSTS AT TRIAL

The Crosettis claim that the trial court erred in awarding Pawloff attorney fees and costs, and they ask us to award them attorney fees for the trial proceedings. The Crosettis assert that because they are the prevailing party for the quiet title proceeding, they are entitled to attorney fees pursuant to RCW 7.28.083(3). We agree that the trial court erred in awarding Pawloff attorney fees and costs.

Under RCW 7.28.083(3) a "prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees." The court may grant the prevailing party "all or a portion of costs and reasonable attorneys' fees . . . if, after considering all the facts, the court determines such an award is equitable and just." RCW 7.28.083(3). As discussed above, we conclude that the Crosettis, not Pawloff, were the prevailing party on the adverse possession claim. Thus, Pawloff is not entitled to attorney fees and costs on that claim and we reverse the trial court's award of attorney fees and costs on that claim. Because this matter is being remanded, the Crosettis, as the prevailing party on the adverse possession claim, may present their request for attorney fees and costs to the trial court on remand.[9]

---

[9] The Crosettis also argue that they are the prevailing party for the timber trespass action. However, as discussed above, the Crosettis are not the prevailing party for the timber trespass action. Therefore, they are not entitled to attorney fees pursuant to RCW 4.24.630 as they claim.

ATTORNEY FEES ON APPEAL

Both parties request attorney fees on appeal. In an action asserting title to real property by adverse possession, RCW 7.28.083(3) authorizes an appellate court to award costs and reasonable attorney fees to the prevailing party in an adverse possession case "if, after considering all the facts, the court determines such an award is equitable and just." *See also Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 308-09, 430 P.3d 716 (2018). As the prevailing party on the adverse possession claim, we award attorney fees to the Crosettis on that claim, in an amount to be determined by a commissioner of this court.

CONCLUSION

We hold that the trial court erred in quieting title to Pawloff because his claim of adverse possession is not supported by the trial court's findings. We also hold that the trial court did not err by denying the Crosettis' timber trespass claim, but erred by failing to address the Crosettis' trespass claim. Finally, we hold that the trial court erred in granting Pawloff attorney fees and costs, that the trial court may consider granting attorney fees and costs to the Crosettis on remand, and we award attorney fees to the Crosettis on appeal. Accordingly, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, J.

SUTTON, A.C.J.